UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

FRANCISCO SOTOMAYOR and JOSE GAGO, on
behalf of themselves and all others similarly situated,

                      Plaintiffs,

       - against –

RXO LAST MILE, INC.,

                    Defendant.

---------------------------------------------------------------------- X

Case No.: 23 Civ. 2009

## CLASS ACTION COMPLAINT

Plaintiffs Francisco Sotomayor and Jose Gago, on behalf of themselves and all others similarly situated, by and through their attorneys Kessler Matura P.C. and Lichten & Liss-Riordan, P.C., complaining of RXO Last Mile, Inc. ("Defendant" or "RXO"), allege as follows as for their Complaint:

## INTRODUCTION

1.     This is an action brought on behalf of current and former New York delivery drivers of RXO, who were deprived of wages due to them under the New York wage payment laws in violation of Articles 6 and 19 of the New York Labor Law ("NYLL"). The above-named Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons who have worked as delivery drivers for RXO and its predecessor XPO Last Mile, Inc. in New York and who were classified as independent contractors for statutory claims that stem from the same wage payment law violations.

## THE PARTIES

### *Plaintiff Francisco Sotomayor*

2.     Plaintiff Francisco Sotomayor is an adult resident and citizen of Queens County, New York.

3.    From approximately 2015 to December 2021, Sotomayor worked for RXO in New Jersey and New York as a delivery driver delivering Ikea merchandise.

4.    From 2015 to approximately 2018, Sotomayor performed deliveries of Ikea products to customers in New York out of an RXO facility in Elizabeth, New Jersey.

5.    From approximately 2018 to December 2021, Sotomayor performed deliveries out of an Ikea facility in Staten Island, New York primarily to customers located in New York.

6.    Throughout his employment with RXO, Sotomayor bore the costs of RXO's business.

7.    RXO deducted expenses directly from Sotomayor's pay, including deductions for insurances, damage claims, administrative costs such as processing fees, and uniforms.  Further, RXO compelled Sotomayor to incur certain expenses which would normally be borne by an employer, such as for fuel costs, vehicle maintenance costs, and payments to helpers.

8.    For example, on November 25, 2021, Defendant deducted $220.57 for Driver Qualification Fees, $5.25 for Reconciliation and Processing Fees, $10.75 for CMS Processing Fees, $53.08 for Occupational Accident insurance, and $16.00 for "CLDA" from Sotomayor's pay.

9.    Additionally, Sotomayor regularly incurred about $180 a week in fuel and vehicle costs.

10.    Sotomayor regularly worked over 40 hours a week.

11.    In the average week, Sotomayor worked six days a week loading his truck at the Ikea facility and performing deliveries for Defendant from approximately 7:00 a.m. to 7:00 p.m. each day.

12.     Sotomayor spent approximately two hours each day loading his truck at the facility each morning.

13.     Sotomayor, on average, earned about $1,000 per week, after accounting for the unlawful deductions and expenses outlined above, as well as paying a helper $125 per day.

14.     There were weeks where Sotomayor worked full time, but after paying the deductions and expenses, as well as paying his helper, Sotomayor earned only a few hundred dollars.

15.     As a result, Sotomayor regularly earned less than the applicable minimum wage.

16.     Moreover, Sotomayor regularly earned less than one and one-half times the minimum wage for all hours worked over 40.

17.     Sotomayor's job duties consisted primarily of physical tasks, such as loading and unloading the truck, cleaning the truck, fueling the truck, and driving the truck.

18.     Sotomayor spent more than 25% of his time performing manual labor such as these tasks.

19.     RXO regularly failed to pay Sotomayor within seven days after the end of the workweek.

20.     For example, Sotomayor was paid on November 25, 2021, for work performed during the workweek ending on November 14, 2021.

***Plaintiff Jose Gago***

21.     Plaintiff Jose Gago is an adult resident and citizen of Ocala, Florida.

22.     From approximately January 2015 to January 2021, Gago worked for RXO in New York as a delivery driver delivering primarily Ikea merchandise.

23.     From 2015 to approximately 2018, Gago performed deliveries out of an RXO facility in Elizabeth, New Jersey performing deliveries primarily in New York.

24.     From approximately 2018 to 2022, Gago performed deliveries out of an Ikea facility in Staten Island, New York primarily to customers located in New York.

25.     Throughout his employment with RXO, Gago bore the costs of RXO's business.

26.     RXO deducted expenses directly from Gago's pay, including deductions for insurances, damage claims, administrative costs such as processing fees, and uniforms.  Further, RXO compelled Gago to incur certain expenses which would normally be borne by an employer, such as for fuel costs, vehicle maintenance costs, and payments to helpers.

27.     Additionally, Gago regularly incurred about $1,000 a week in fuel and vehicle costs to perform deliveries.

28.     Gago regularly worked over 40 hours a week.

29.     In an average week, Gago worked five days a week, Tuesday through Saturday, loading his truck at the Ikea facility and performing deliveries for Defendant from 5:00 a.m. to approximately 7:00 p.m. each day.

30.     Gago spent approximately 2-3 hours each morning at the facility loading his truck.

31.     Gago, on average, earned about $2,000 per week, after accounting for the unlawful deductions and expenses outlined above, as well as paying his helper $100 per day.

32.     There were weeks where Gago worked a full week and, after paying all of the deductions and expenses outlined above as well as paying his helper, Gago earned approximately $250 for the week.

33.     As a result, Gago regularly earned less than the applicable minimum wage.

34.    Moreover, Gago regularly earned less than one and one-half times the minimum wage for all hours worked over 40.

35.    Gago's job duties consisted primarily of physical tasks, such as loading and unloading the truck, cleaning the truck, fueling the truck, and driving the truck.

36.    Gago spent more than 25% of his time performing manual labor such as these tasks.

37.    RXO regularly failed to pay Gago within seven days after the end of the workweek.

***The Class Members***

38.    Plaintiffs bring this action on behalf of a class of similarly-situated individuals, namely, all other persons who have executed contract carrier agreements (either personally or on behalf of corporate entities) and who personally provided delivery services for RXO in the State of New York during the time period from six years prior to the filing of this Complaint until the date of judgment in this action (also referred to as "Class Members").

***Defendant***

39.    Defendant RXO is a foreign corporation incorporated under the laws of Georgia.

40.    RXO is a subsidiary of RXO Last Mile Holding, Inc. and RXO, Inc., which are both Delaware corporations.

41.    RXO is either wholly owned by or at least 90% owned by RXO, Inc.

42.    RXO, Inc.'s headquarters, according to its 2023 Form 10-K, is 11215 North Community House Road, Charlotte, North Carolina 28277.

43.    RXO is not headquartered in New York State.

44.     Upon information and belief, RXO is either headquartered at 11215 North Community House Road, Charlotte, North Carolina 28277 or 1851 West Oak Parkway, Marietta, Georgia 30062.

45.     RXO knew or should have known that it misclassified and underpaid the Class Members.

46.     RXO's misclassification of the Class Members as independent contractors and related violations of New York law were willful or otherwise done without a reasonable good-faith belief that it's policies were lawful.

47.     RXO conducted business as XPO Last Mile, Inc. until November 2, 2022, when it changed its name to RXO Last Mile, Inc. as part of a corporate spin-off.

48.     RXO and its predecessor has been involved in disputes over RXO's classification of its drivers, as explained in its 2023 10-K:

> The Company's last mile subsidiary is involved in several class action and collective action cases involving misclassification claims. The misclassification claims related solely to the Company's last mile services, which operated as a wholly owned subsidiary of XPO until the spin-off of RXO was completed. As of November 1, 2022, pursuant to the Separation and Distribution Agreement between XPO and RXO, the liabilities of XPO's last mile subsidiary, including legal liabilities, if any, related to the misclassification claims, were spun-off as part of RXO. Pursuant to the Separation and Distribution Agreement, RXO has agreed to indemnify XPO for certain matters relating to RXO, including indemnifying XPO from and against any liabilities, damages, costs, or expenses incurred by XPO arising out of or resulting from the misclassification claims described above. We believe these suits are without merit and we intend to defend the Company vigorously. We are unable at this time to determine the amount of the possible loss or range of loss, if any, that we may incur as a result of these matters.

49.     Moreover, it has been over nine years since the New York State Commercial Goods Transportation Industry Fair Play Act (the "Fair Play Act") was signed into law, which the

Department of Labor has published Fact Sheets and other materials so companies doing business in New York can understand their obligations under the Fair Play Act.

50.     At all relevant times, RXO was an "employer" as that term is defined under N.Y. Lab. Law § 862-a(6).

51.     At all relevant times, RXO was an "employer" as that term is defined under N.Y. Lab. Law § 190(3).

52.     At all relevant times, RXO was an "employer" as that term is defined under N.Y. Lab. Law § 651(6).

## JURISDICTION

53.     This court has jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act ("CAFA").

54.     There are at least 100 members of the proposed class.

55.     At any given time, RXO employs at least 50 Class Members.

56.     This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

57.     The parties are citizens of different states.

58.     Given the number of class members employed on any given week the six-year statute of limitations for NYLL cases, there are believed to be about 15,500 workweeks at issue in this matter.  On average, in any given workweek, the Class Members, individually, incurred, at least $325 in backpay and liquidated damages, as described throughout this Complaint.

59.     As a result, the aggregate amount in controversy exceeds $5,000,000, inclusive of damages, statutory penalty damages, attorneys' fees, pursuant to NYLL § 198.

60.     At least one member of the proposed class is a citizen of a state different from that of Defendant.

61.     Plaintiffs' claims involve matters of national or interstate interest.

62.     This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, since there is diversity between the parties and since the amount in controversy for each Plaintiff exceeds $75,000.

63.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims, Plaintiffs' work, took place in Richmond County, New York, and RXO is subject to personal jurisdiction in this District.

64.     That is, RXO employed Plaintiffs and members of the Class and violated their rights under the NYLL within this district and within the jurisdiction and venue of this Court.

65.     This Court has personal jurisdiction over RXO pursuant to New York's long-arm statute because it transacts business in the State of New York and it enters into contracts with the Class Members.

## STATEMENT OF FACTS

66.     RXO, which went by the name XPO Last Mile, Inc. until November 2, 2022,  is in the business of providing delivery services for companies such as Home Depot, Sears, Bob's Discount Furniture, Lowe's, Ikea, and Amazon.  To carry out this central function, RXO purports to contract with individuals such as Plaintiffs, to drive a delivery truck and to deliver retail merchandise to customers' homes.

67.     In order to do this work, RXO requires Plaintiffs, as well as the other members of the class, to sign an agreement which states that its drivers are independent contractors.

68.     Although RXO classifies Plaintiffs, as well as other class plaintiffs, as independent contractors, the control manifested over the drivers by RXO as well as the drivers' inability to

maintain an independently established business demonstrates that they qualify as RXO's employees under the RXO wage payment law. The following facts support this claim:

a. Plaintiffs, as well as the other drivers, is required to report to specified locations, such as an RXO or Ikea facility whose loading docks were maintained or controlled by RXO, at specified times, at which time they would be provided with a list of deliveries to make.

b. Plaintiffs were required to arrive at the Ikea facility in Staten Island by 7:00 a.m. and be loaded and off the dock by 8:00 a.m.

c. Plaintiffs, as well as the other drivers, were and/or are instructed to load the goods to be delivered onto their trucks in a specific order.

d. Plaintiffs, as well as the other drivers, were and/or are instructed to make all deliveries within two or four-hour time windows.

e. The manifests received by Plaintiffs, as well as the other drivers, instructed and/or instruct them as to whom deliveries must be made to, the order in which deliveries are to be made, and locations where deliveries to be made. Sometimes, during the day, additional deliveries that were not originally scheduled for the day are added to Plaintiffs and other drivers' routes and they are not allowed to postpone those deliveries for another day or to turn them down.

f. RXO would charge Plaintiffs if they arrived for a stop either before or after the time window and not pay Plaintiffs for the stop.

g. Plaintiffs, as well as the other drivers, were and/or are required to wear uniforms when making deliveries for RXO. Uniforms included a badge that identified

the drivers as RXO or Ikea drivers or helpers as well as shirts that said either "Ikea" or "XPO Last Mile," as well as a jacket and black pants, with black steel-toed shoes.

h.  Plaintiffs, as well as the other drivers, could be suspended if they were caught working without a uniform on.

i.  Plaintiffs, as well as the other drivers, were and/or are required to carry a cell phone so that they may receive calls or texts from RXO. RXO contacts Plaintiffs during the day with instructions related to cancellations and rescheduling of deliveries.

j.  Plaintiffs received calls from Ikea requesting information about how far they were from a stop.

k.  Plaintiffs and other drivers also had to download an RXO application onto their phones to login when they arrive at the store each morning and to log the beginning and end of each delivery, to view directions to customers' homes, directions to the customers' homes, and which notifies the driver when they are running late for a delivery. The drivers are required to scan each delivery using the phone application.

l.  RXO required Plaintiffs, as well as the other drivers, to attend morning meeting two or three times a week to go over instructions for performing deliveries and discuss other issues with deliveries such as customer complaints.

m.  Plaintiffs, as well as the other drivers, were and/or are required to be in contact with RXO dispatchers regarding the status of deliveries.

n.  RXO would suspend Plaintiffs, as well as other drivers, when they were the subject of a customer complaint.

o.  RXO suspended Plaintiffs as well as the other drivers if they refused to perform a route they were assigned by RXO.

p.  Plaintiffs, as well as the other drivers, were and/or are required to get signatures from customers when deliveries are made.

q.  RXO could prohibit Plaintiffs and the other class members from using helpers they wanted to use to perform deliveries if they failed a background check.

r.  RXO could further prohibit Plaintiffs and the other drivers from using helpers or secondary drivers even if they passed the background check for any reason, including that the individual argued with RXO or Ikea personnel or was the subject of a customer complaint.

s.  RXO required Plaintiffs, as well as other drivers, to work five to six days a week.

69.  RXO's clients, such as Ikea, require RXO to ensure that deliveries are performed pursuant to the client's rules and procedures.

70.  Ikea also exercised control over Plaintiffs and the class members.

a.  Plaintiffs worked out of an Ikea facility.

b.  Each morning Plaintiffs had to arrive at the Ikea facility and check in with Ikea security.

c.  Ikea managers oversaw the loading of trucks.

    d.   Plaintiffs were required to wear a shirt and badge that identified them as Ikea drivers and Ikea managers would speak to drivers or helpers if they were out of uniform.

    e.   Ikea managers confronted Plaintiffs as well as the other drivers when there was a customer complaint about a delivery.

71.    Ikea had the right to prevent Plaintiffs and other drivers from using secondary drivers or helper they wanted to us to perform deliveries.

72.    Plaintiffs as well as other drivers were told directly by RXO and Ikea managers that they could not use certain individuals as helpers for various reasons including failed background checks.

73.    RXO requires delivery drivers with which it contracts to have or lease a truck that meets specifications determined by RXO.

74.    Ikea has lately required drivers to use electric delivery trucks that are rented from Ikea and display Ikea logo on the box of the truck.

75.    RXO keeps track of Plaintiffs' performance, as well as the performance of its other delivery drivers, through customer ratings. RXO would discuss the scores with Plaintiffs and the other drivers and suspended drivers who had low customer ratings.

76.    RXO also requires delivery drivers with which it contracts to obtain insurance, including automobile liability, commercial general liability, umbrella liability, cargo, and worker's compensation coverage, at levels dictated by RXO.

77.    RXO retained the right to terminate the contract with Plaintiffs, as well as the other class members, without cause.

78.    Plaintiffs, as well as the other class plaintiffs, performed and/or perform work which is integral to the business of RXO – i.e., they perform delivery services and RXO is engaged in the business of providing delivery services to its customers.

79.    Plaintiffs, as well as the other class plaintiffs, do not have an independently established trade or business in that they are dependent upon RXO for their work, they do not negotiate with RXO customers regarding the rates charged for their services, and they are not permitted to contact RXO customers independent of RXO.

80.    Plaintiffs, as well as other class plaintiffs, are not permitted to subcontract or assign their rights under their agreement with RXO to another delivery driver.

81.    RXO deducts certain expenses directly from the compensation it pays, including certain expenses directly from the compensation it pays, including deductions for insurances (including auto liability, cargo, general liability, umbrella and workers' compensation insurance), gift cards, administrative costs such as processing fees, uniforms, and compels Plaintiffs and other drivers to incur certain expenses which would normally be borne by an employer, such as for fuel costs, vehicle maintenance costs, and payments to helpers.

82.    When RXO determines, in its sole discretion, that a delivery has been made in a manner it deems to be unsatisfactory (e.g., damaged goods, damage to customer property), RXO will deduct the costs of such damage from pay checks. Plaintiffs as well as the other drivers could not and/or cannot appeal such deductions.

83.    In approximately February 2022, RXO unilaterally lowered the rates for all deliveries performed by Plaintiffs and the other drivers and started paying less for deliveries that RXO determined required only one person to perform, which could include a mattress or a sofa.

## CLASS ALLEGATIONS

84.    Plaintiffs bring this action individually and on behalf of a class of similarly situated individuals. The class of individuals similarly situated are all individuals like the Plaintiffs who have performed or currently perform delivery services for RXO as full time delivery drivers within the State of New York and who have been classified as an "independent contractor" rather than as an employee.

85.    The Class meets all the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.

86.    At least 40 drivers have performed delivery services for XPO in New York during the applicable statutory period.

87.    The Plaintiffs' claims related to their misclassification are not only typical of the claims of putative class members, they are virtually identical.

88.    Common issues, such as whether RXO's policy of classifying drivers as independent contractors rather than employees, predominate over any individualized issues.

89.    Plaintiffs and their counsel, who have been class counsel in many similar cases, will adequately represent the putative class, and a class action is the superior method of trying these claims.

### COUNT I
**(New York Labor Law - Unlawful Wage Deductions)**

90.    All previous Paragraphs of this Complaint are incorporated as though fully set forth herein.

91.    Plaintiffs and the Class Members were employed by RXO and, as such, are entitled to the NYLL's protections. See N.Y. LAB. Law § 862-b.

92.     Defendant's actions due to Plaintiff and the Class were willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law §§ 198, 663.

93.     RXO violated the NYLL by subjecting Plaintiffs to improper deductions, charges and/or expenses, that were not incurred for the benefit of Plaintiffs. See N.Y. LAB. Law § 193; 12 N.Y.C.R.R. §§ 142-2.10, 195-2.1.

## COUNT II
### (New York Labor Law – Record-Keeping Requirement Violation)

94.     All previous Paragraphs of this Complaint are incorporated as though fully set forth herein.

95.     RXO failed to supply Plaintiffs and the Class Members with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

96.     RXO's payment settlement sheets did not contain:  RXO's name, the address and phone number of RXO, the hours worked by Plaintiffs and the Class Members.

97.     RXO's failure to provide accurate wage statements facilitated their violations of the New York Labor Law.

98.     RXO's failure to provide accurate wage statements hindered Plaintiffs' and the Class Members' ability to (a) evaluate whether their wage rights were being violated at the time of payment, (b) make informed decisions on whether to remain in RXO's employ, and (c) negotiate with RXO.

99.     Plaintiffs and Class Members are entitled to damages of $100 for each workweek that RXO failed to provide accurate wage statements, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

### COUNT III
**(New York Labor Law – Failure to Pay Overtime wages)**

100.    All previous Paragraphs of this Complaint are incorporated as though fully set forth herein.

101.    Plaintiffs and the putative Class Members were Defendants' employees, as defined by N.Y. Lab. Law §§ 651 and 862-b.

102.    Plaintiffs and the putative Class Members class routinely worked in excess of 40 hours per workweek for Defendant.

103.    RXO's failure to pay overtime compensation to Plaintiffs and the Class Member was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

104.    RXOs failed to pay Plaintiff and the members of the proposed Rule 23 class at the rate of one-and-a-half times the applicable minimum wage for all hours in excess of 40 as required by the NYLL and 12 N.Y.C.R.R. § 142-2.2.

### COUNT IV
**(New York Labor Law – Failure to Pay the Minimum Wage)**

105.    All previous Paragraphs of this Complaint are incorporated as though fully set forth herein.

106.    Plaintiff and the Putative Class Members are RXOs' employees, as defined by N.Y. Lab. Law §§ 651 and 862-b.

107.    RXO's failure to pay at or above the minimum wage to Plaintiffs and the Class Member was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

108.    RXOs failed to pay Plaintiff and the members of the proposed Rule 23 class minimum wages for all work hours, after accounting for kickbacks, deductions, and expenses, as required by the NYLL and the supporting New York State Department of Labor regulations.

**COUNT V**
**(New York Labor Law – Untimely Payment of Wages)**

109.    All previous Paragraphs of this Complaint are incorporated as though fully set forth herein.

110.    Plaintiffs and the Class Members were employed by RXO and, as such, are entitled to the NYLL's protections. See N.Y. LAB. Law § 862-b.

111.    Plaintiffs and the Class Members were employed by RXO as "Manual Workers" as defined by N.Y. Lab. Law § 190(4).

112.    As a result, RXO was required to pay Plaintiffs and the Class Members in accordance with NYLL § 191(1)(a).

113.    Plaintiffs and the Class Members were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.  Plaintiffs and the Class Members lost the opportunity to grow such untimely-paid wages through investment.  Plaintiffs and the Class Members also lost the opportunity to use their earned wages which RXO wrongfully withheld.

114.    RXO, however, benefited from the delayed payments.  That is, among other things, RXO reduced its administrative costs by paying less frequently than required and used the extra

money RXO was holding onto as it pleased (or, alternatively, did not use the money and earned interest on the unpaid wages) until payroll was cut.

115.     Plaintiffs are informed, believe, and thereon allege that RXO's unlawful conduct has been widespread, repeated, and consistent as to the Class Members and throughout RXO's operations in New York.

116.     RXO does not possess a good faith basis for deciding to pay and thereafter continuing to pay its employees' wages biweekly.

117.     The State of New York has required employers to pay certain manual workers on a weekly basis since the 19th Century.  See N.Y. Session Law 1890, Ch. 388 § 1; N.Y. Session Law 1897, Ch. 415 §§ 2, 10.

118.     A reasonable employer inquiring into New York's wage payment rules would know that manual workers are to be paid each week given that, for example, the rules are listed on the Department of Labor's Frequency Asked Questions flyer regarding the Wage Theft Prevention Act    (https://dol.ny.gov/system/files/documents/2021/03/wage-theft-prevention-act-frequently-asked-questions_0.pdf) and many legal, human resource, and employment blogs brought attention to this issue following the First Department's 2019 decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dep't 2019).

119.     Upon information and belief, RXO does not qualify for the exemption from the NYLL's weekly payment requirement because it does not employ over 1,000 in the state of New York.

120.     Upon information and belief, RXO neither applied for the exemption nor received authorization from the Secretary of Labor to pay its employees on a biweekly basis.

121.    Upon information and belief, RXO did not: (a) inquire into whether its payroll practice complies with the NYLL; (b) take requisite steps to ensure that Plaintiffs and Class Members were paid as per the timely pay requirements of the NYLL; and (c) conduct any study or audit of its compensation practices to ensure that Plaintiffs and the Class Members were paid in compliance with the NYLL's timely payment requirements.

122.    Plaintiffs and the Class Members suffered injuries due to RXO's late wage payments including, but not limited to, the loss of the time value of money, inability to invest and/or earn interest on the untimely paid wages, and inability to use their untimely-paid wages to maintain sustenance.

123.    Due to RXO's violations of the NYLL, Plaintiffs and the Class Members are entitled to damages from RXO due to such underpayments caused by RXO's violations of NYLL's timely pay laws for the entire NYLL class period.  Such damages include, but are not limited to, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.  <u>See</u> N.Y. LAB. Law § 198.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seek the following relief:

A.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

C.    Pre-judgment interest and post-judgment interest as provided by law;

D.    Appropriate equitable and injunctive relief to remedy violations, including but not limited to an order enjoining RXO from continuing their unlawful practices;

E.      Attorneys' fees and costs of the action;

F.      Statutory damages, as provided by N.Y. Lab. Law § 198, for RXO's violations of N.Y. Lab. Law § 195;

G.      Issuance of a declaratory judgment that the practices complained on in this action are unlawful under N.Y. Lab. Law § 198, *et. seq.*;

H.      Plaintiffs' damages as provided at trial, including damages for (i) the deductions taken from their compensation checks, (ii) the failure to pay overtime, and (iii) the failure to pay the minimum wage;

I.      Liquidated damages equal to the damages incurred for (i) the deductions taken from their compensation checks, (ii) the failure to pay overtime, and (iii) the failure to pay the minimum wage;

J.      Liquidated damages equal to the value of the unlawfully delayed wage payments, in violation of N.Y. Lab. Law § 191;

K.      Application of statutory liquidated damages; and

L.      Such other and further relief as this Court deems just and proper.


                              Respectfully submitted,

                              By: /s/ Troy L. Kessler
                                    Troy L. Kessler

                              Troy L. Kessler
                              Garrett Kaske
                              **KESSLER MATURA P.C.**
                              534 Broadhollow Road, Suite 275
                              Melville, New York 11747
                              Telephone: (631) 499-9100
                              tkessler@kesslermatura.com
                              gkaske@kesslermatura.com

Harold L. Lichten (*Pro hac vice* forthcoming)
Benjamin J. Weber (*Pro hac vice* forthcoming)
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
bjweber@llrlaw.com

*Attorneys for Plaintiffs and the Putative Class*